United States Capitol Police v. Office of Compliance Good morning. May it please the court. My name is Kelly Cindy and I represent the petitioner United States Capitol Police. Congress vested the Capitol Police Board CPB and the chief of police, not an arbitrator, with unfettered authority to determine whether a person can continue to hold the uniform, the firearm, and the heavy responsibility of a USC police officer. For that reason, Congress enacted the special rule on terminations, which governs of USCP employees. Further, Congress applied to employees covered by the Congressional Accountability Act provisions of the Federal Service Labor Management Relations statute that courts have interpreted as limiting an employee's rights or abilities to challenge certain serious personnel actions, such as terminations, under a negotiated grievance procedure. In light of this backdrop, the Office of Compliance Board of Directors OOC's decision in this case is inconsistent with the statutory provisions. The USCP had no obligation to comply with a May 13, 2014 arbitration award reversing the chief and the CPB's decision that Mr. Ricken was no longer fit to serve as a USCP officer. They had no obligation to comply with an award requiring that Mr. Ricken return to duty as a USCP police officer. So there was no unfair labor practice. That is our position. Because the arbitrator had no jurisdiction under the CAA to issue the arbitration award, there could not have been an unfair labor practice. But it's not explicitly excluded. You're saying that that's how the entire contract relationship with the statutory provisions should be interpreted that way? The statutory provisions of the special rule on terminations that apply to the United States Capitol Police? You're saying the statute says that terminations are not subject to this relationship with the union? I see. I understand your question. The statute says that on its face. I understand your question. I'm saying that let me just say something. Let's say if I have your case in my hands. You're making a jurisdictional challenge to the board's decision here, essentially on two grounds. There's a broader ground for purposes of discussion I'd like to call the Fausto ground. The case Fausto Supreme Court case, subsequent cases in the D.C. Circuit, the 8th Circuit, the 9th Circuit, I believe, and maybe one other. In your view, say that the subject matter of termination, at least, is simply taken off the play. It can't be part of a collective bargaining agreement. It can't exist functionally. That is correct. You have a second argument, which I take as a subject matter jurisdiction argument, typically. You say in the case of terminations here, there has already been a subject is entirely controlled by the police board. That is correct. Because it is entirely covered by the police board, it is not a proper subject to be in an arbitration agreement. I'm going to clarify. Even assuming, for example, if we rejected Fausto, you would still have the second argument. That is correct. Because it's more of subject matter than it is a structure. That is correct. And then I understand you have a timeliness issue, as well, as to whether or not the unfair labor practice, which goes to the refusal to follow the arbitrator's work, whether that was timely filed by your adversary. Because if it wasn't timely filed, then the decision goes away, as well. That is correct. But it's essentially three arguments. That is correct. You have a little argument based on whether or not a summary judgment standard was properly applied. The fleshing out of your additional arguments is in your reply to the motion to compel, if you will, right? That is correct. Okay. Thank you. I'll start with this. That's complicated. Yes. I'll start with the special rule on terminations. Our position essentially is that terminations are specifically provided for by the special rule. As such, they're not conditions of employment that are subject to the negotiated grievance procedures under section 7121. The reason we've arrived at this conclusion is because the special rule requires the chief of police to submit to the CPB any termination recommendation for a USCP employee. This is not merely a procedural requirement. The requirement is that he provides notice of any termination under his authority under 2 USC 1907E1A, and that the CPB then has the authority to approve or disapprove of that termination recommendation. For that reason, our position is that it's the CPB that has final authority to determine whether or not a USCP employee will continue to wear the uniform of a USCP officer. It is true that the statute does not specifically state that the decisions of the CPB are not reviewable by an arbitrator, but it does not need to state that as our position. The reason it does not need to state that is because the CPB is not subject to the CAA's requirements concerning the labor management relations provisions that have been adopted from the FSLMRS. That's because it's not an employing agency? It is not an employing agency. That's the reason why you just made that statement, correct? That is correct. Thank you. That is correct. It would be helpful if you, for me at least, and you stating an overarching conclusion, if you kind of drop a footnote to tie it to the proposition or the standard that you're placing your eggs on. I will endeavor to do that. It's just that this was a very complicated case for me. Okay. So our position is because the CPB is not an employing office, its decision making as far as USCP terminations or terminations of USCP employees are not subject to review by an arbitrator. In this case, you have an arbitrator who made the determination after the CPB and the chief made a determination as to termination, and that arbitrator reversed despite finding that the basis of determination was sound. In doing so, that creates an inherent tension between the CPB's determination in this case. They determined that Mr. Ricken was not fit to continue as a USCP officer. An arbitrator comes along and says, no, I believe for whatever reason whatever standards I'm applying that Mr. Ricken can continue to be a USCP officer. And instead of termination, I'm going to impose a 30 day suspension. That's the inherent tension between the special rule and terminations in which Congress gave to this entity that is outside of the USCP, which consists of the Sergeant at Arms of both chambers who are elected by the Senate and House respectively. And the architect of the Capitol, these three people who have been entrusted with authority over USCP terminations reached this result based on evidence that the USCP presented in presenting its recommendation for termination and the arbitrator therefore reversed that decision. Again, this is the inherent tension that we are pointing out that clearly by creating a special rule on termination, Congress intended the CPB and not an arbitrator who has no authority over CPB decisions. Why didn't they say so? One of the troubling aspects here is that throughout in the origins of this legislative system, it was stated over and over that what we need is some sort of counterpart to the Executive Merit Systems Board. And there's no question but that the Merit Systems Board would have jurisdiction of termination. And if it was intended to draw this line, isn't it curious that the statute is silent? I don't think it's curious at all. And the reason why is when the CAA was established by Congress, its stated purpose was to give employees in the legislative branch, particularly as it applies to labor relations, labor management relations statutes, to give them the same rights that employees in the executive branch exercise. However, in looking at what statutory provisions to adopt under the CAA, Congress specifically chose not to adopt an MSPB type of system. They had that option. There was evidence or testimony before them concerning how an MSPB like system would apply to legislative branch employees. And in fact, they adopted such a They didn't say so. This is what troubles me. They didn't say so. If that was an election, it is a powerful distinction. A difference from the labor collective bargaining procedures throughout to have an explicit exception. And again, this is what I find troublesome is the silence. Well, I suppose my point here is that I don't think choosing not to create a system that applies to USCP employees is silent. Because they, as I said, they've created such a system for other entities within the legislative branch, such as the GAO, for example. And the Library of Congress has For the subject matter, for the people we have in front of us, they created an interesting but somewhat unusual statute, very different from what we'll call the MSPB. And the legislative history, as I read it, you can correct me if I'm wrong, made very, very clearly that we want a system in which if people use their rights to form collective bargaining groups, and they have a collective bargaining agreement, we intend for the decision of the arbitrator to be final and not reviewable. I read that in the legislative history throughout. The legislative history of the FSLMRS. I'm not talking about the special rule amendment. I'm talking about the creation of the overall system. Of the CAA. Yes. Okay. I'm not. The notion, and I mean, I read it as far as I could, was clearly we know what we're doing. We're giving, having a situation here where there is a final decision by arbitrators, unlike what happens over on the MSPB side, where the decision of the arbitrator is subject to judicial review. So it looked to me like they, strange as it would be seen, they created a very different structure. What I recall from the legislative history of the CAA, as it applies to the federal labor management relations statute, was that they intended for the employees of the legislative branch to have the same rights that those under the executive branch had. I don't recall any mention of permitting an arbitrator to be the final authority with respect to arbitrations of terminations. And specifically... No, I'm not saying that language connected. I'm talking about in the overarching intent, the structure of the, say yourself, well, if I work in Capitol Police or I work in a congressional office, what are my rights? What do I get compared to what I would get if I'd been an MSPB? And they're different. That is correct. And to follow up on that, in speaking about the rights allowed for executive branch employees and the rights allowed for congressional branch employees under the CAA, Congress was very specific that when employees in this branch, the executive branch, were permitted to raise appeals in the judicial body, that they also intended for employees in the legislative branch to exercise those same rights. However, because they didn't adopt the MSPB process, there is no subsequent process that applies to USCP employees, no statutory process that would permit a USCP employee to raise an appeal to an arbitrator's decision to a judicial body. There simply doesn't exist that process. But this was never contemplated when Congress adopted provisions of the CAA in terms of they didn't specifically address that question is what I'm trying to say here. They didn't, in the legislative history, there is no contemplation about what would occur if an employee who, an arbitrator made a decision and that employee or the employing office attempted to appeal that decision. I didn't mean to suggest that the legislative history solves this very case. Clearly, I found none of that. Okay. It seems to me that we have to decide whether or not, and other cases are raising the same issues as I understand it, whether or not the Fausto argument in essence just asks from this whole system, this type of a problem, and if not, whether or not the special rule, because it deals with termination, simply says this is not proper subject matter for bargaining agreement. So with that, I want to turn to section 7121 and the Fausto decisions if there are no questions, further questions about the special rule itself. We'll save some rebuttal time. Let's hear from the other side. Okay. Mr. Heumann. Thank you. May it please the court. Good morning. The technical corrections act became law on March 4th of 2010. On June 8th of 2010, some three months afterwards, the collective bargaining agreement that's at issue here was reached between the parties. Clearly at that time, the chief of police believed that it was in the best interests of the capital police to provide for arbitration of removals. And that there was nothing in the TCA itself that prevented arbitration of removals. That's an interesting background point, but it isn't just positive for the interpretation of the statute, right? Right. But obviously at the time, very recently after the act was passed, they did not believe there was anything in that act that prevented them from arbitrating removal decisions. And of course, this was... There may well have been since that time that the special rule was enacted, terminations that they didn't agree with, cases like this that they didn't appeal up. But essentially their argument is that they violated the law when they entered into the agreement providing for removal of terminations. So they could not have passed 16th of 2015 when they refused to comply with the arbitration award. So it seems to be the only question is whether the police chief had the authority to enter into this agreement after the TCA was enacted. And if you follow the approach that this court typically takes, you look at the statutes that apply to the capital police and not to the statutes that don't apply to the capital police and speculate as to why they don't apply. And if you look at the statutes, the first one I think is a very broad statute which is 1907E1A which says the chief of the capital police in carrying out the duties of office is authorized to appoint, hire, suspend, with or without pay, discipline, discharge, and set the terms, conditions, and privileges of employment of employees of the capital police subject to applicable laws and regulations. This is a very broad grant of discretionary authority to the police chief. And there is simply nothing in this language that prevents the chief from deciding it's in the best interest of his department to decide that arbitration of removals is the way to handle that. He has to do this subject to all applicable laws. Excuse me? He says he has to take those decisions subject to all applicable laws. That's true. And regulations. If you look at the legislative branch as a whole, the authority is under Title II and not under Title V. And really the legislative branch is in the same situation that the executive branch was prior to the Civil Service Reform Act. There has never been any to try to make all the rules uniform so that the rules of the architect of the capital are much different than the capital police rules, than the Library of Congress' rules. And for the most part the rules are by regulation or by the collective bargaining agreement. And there's nothing really in the language that they pass that restricts the ability to negotiate, put that into the collective bargaining agreement. And again, when you look at the special rule, the special rule does not... The collective bargaining agreement rise up to the level of regulations? So when the chief is told that he has to make his termination decisions and consistently with all applicable law and regulation, does that include a CBA? I think it does, yes. If he's agreed to that as part of the CBA, then those provisions become part of that. So a CBA could... What happens if a CBA conflicts with a regulation? Well... Again, that would be a problem. But of course, obviously the chief of police, when he entered into the agreement, would believe at the time it did not conflict with the regulation. I mean, I can't imagine a chief agreeing to something that was contrary to his own regulations. Well, we didn't really get to conflict, but we really do have the question that's being pressed where there is silence and the interpretation. Right. And it seems to me that the language that we have, though, seems to grant the authority. And the only restriction is that to removing somebody, he has to get either implicit or explicit approval from the Capitol Police Board. But it's still his decision. There's nothing in there that says this is the Capitol Police's decision. But the board can overrule it? I'm not sure it can. There's nothing in the act itself that says... What's the language that says when he has to go to the... That's of the special rule. What is that specific language? That language is the chief may terminate an officer, member, or employee only after the chief has provided notice of the termination of the Capitol Police Board in such manner as the board may from time to time require. And? And the board has approved the termination, except that if the board has not disapproved the termination prior to the expiration of the 30-day period... What happens if the board disapproves? I assume if he disapproves, the board disapproves, then he cannot proceed with the termination. So the board can tell the chief of police, I'm sorry, you want to terminate Clevenger, but you can't? Correct. But they can't tell the police that he has to terminate Clevenger. Doesn't that put the final power in the board? Well, as I said, but they can't tell the police he has to terminate Clevenger. It's still his option whether to proceed with the... After he obtains the approval of the board, whether to proceed with the termination. If other evidence came up after he obtained the approval from the board, there's nothing in the statute that requires him to even terminate Clevenger. Assuming the board disapproved, is the chief of police can still terminate him? No. No. Right. But if they approve or implicitly approve, he still does not have to terminate the officer. There's nothing in the statute that says that. In fact, it says very clearly it's his decision. The police chief may... He can change his mind? He can change his mind. And it's also, I think, worthwhile to point out that there are limitations on that authority in other places in the statute. So in 1921A, it says very specifically that the Capital Police Board and the sole and exclusive authority to determine various types of compensation. And then they go on to say that the determination of a rate or amount described may not be subject to review or appeal in any manner. So what you have is language further on in the statute that says these are areas where there cannot be any review. Very specific language saying this is a decision that the board must make, the Capital Police can make, and nobody else has any review. And you do not see that language when it comes to terminations or removals. If I can move on to the Fausto arguments. I think the one thing I think to bear in mind is that Congress responded to Fausto by passing the Civil Service due process amendments of 1990, which in fact restored the rights to employees like Fausto who did not have the right to appeal. And I think that's why you don't see any circuit court decisions after 1990 that expose the Fausto type of line of reasoning. So what you don't have, as I said, unlike with the Civil Service Reform Act, you had no attempt to place legislative branch agencies under some type of comprehensive Civil Service procedure like you had with the Civil Service Reform Act. And under Fausto, you had a very carefully reasoned decision that said you had an employee who was given some rights under Chapter 45 of Title V, but was denied certain other rights under Chapter 43 of Title V. So that's not the situation here. We don't have any statute that gives the employee certain rights and denies them certain other rights. So it's very hard to apply the type of Fausto reasoning here. There's no predicate here. There's no predicate for taking the Fausto logic and trying to put it onto this environment. Correct. Correct. I mean, you don't have any type of attempt to kind of comprehensively... Not a matter of congressional employees trying to get something that Congress already told them they couldn't have. That's right. That's right. In terms of their arguments regarding the sections of the Federal Service Labor Management Relations Statute, I mean, you have 7121E1, which is simply a choice of forum provision. Basically, it says that if you choose one forum, you can't re-litigate it in the other forum. You have 7121F, which again, allows for direct review of arbitrations and of the office provides for direct review of removal decisions. So again, I don't think either of those apply to this situation here. But even if they do, that's what the plain language of those statutes say. They don't say anything about denying people the right to arbitrate their removal decisions. Regarding the timeliness argument, I think if you look at page 50 of the brief filed by the Capitol Police, what you see is really a total inaccurate statement of what the rule of law is in the D.C. Circuit. In the very first sentence, they say the limitation period on ULP charts begins around when the injured party discovers, when the exercise of the due diligence should have discovered that they had been injured. If you read that case, yes, they do have that quotation in there. But in the very next sentence, they say, we are not adopting the discovery rule. If you read the next sentence, they say, whereas here the ULP chart alleges that the FOP suffered an injury. Page 50, you say? Page 50, yes. Where in page 50? Right at the top of the page. Okay. The second sentence says that the standard is when the department failed to comply with an arbitration award, the cause of action accrued when the department first had an opportunity to comply with the award. Again, if you read the decision, they decided just the opposite. What they said is that the statute does not begin when the arbitration award became final. In fact, it begins when they failed to comply or notified them that they failed to comply. Then in the third sentence, they go on to say that they adopted two points. One is that it occurs when a party expressly rejects its obligation to comply with the award, or two, simply fails to take the steps ordered by the award. Again, they do make two points, but the second point is not accurately stated. The second point, if you read the case, says when a ward establishes a deadline for implementing obligations required by the award, and the deadline passes without the party taking any action to implement the award. That's the standard, and that's the standard that the board applies. In this case, the date upon which the Capitol Police would like to have the obligation to timely file an unfair labor practice is date X. Correct me if I'm wrong, but doesn't the record show that after the date that they specify, the Capitol Police was telling the other side, we're still thinking about it? Yes. Yes. So, if they choose a date to trigger the duty to file the unfair labor practice, but they're going to need to file one or not, we haven't made up our mind what to do. Right. I think if you look at this record, it's clear they did not make up their mind what to do until March 6th, when the Capitol Police Board issued that order directing the Capitol Police Chief not to comply with decisions from the Office of Compliance. So, I mean, if you believe them that the Capitol Police Board is really the decider in this case, I think the record is quite clear that that did not happen until March 6th, when they said, when they ordered the Capitol Police not to comply with the order. Can I ask a question about the cross-application for enforcement of the final decision? We have that as an independent motion that, if you will, has been filed. I mean, I've been on court 28 years. I've never seen, I realize that the FRAP, Federal Real Estate Appellate Procedure, provided this. I've never seen an instance where someone comes in and says, order the agency to do what your opinion tells them to do. I think it's fairly common, if you look at NLRB and FLR cases, when it comes up on review to actually petition for enforcement as well, so that the issue doesn't come back to you in another form. So if we have, especially where you have a party that's demonstrated a reluctance to comply with any orders from the compliance board. Is this more, I mean, ordinarily a failure to follow a court order would result in a contempt, wouldn't it? That's correct. Is this contempt on contempt? I don't quite understand why this needs to be done. Well, unless there's an order from the court for compliance, there would be no contempt. I mean, our board cannot enforce a contempt proceeding. I mean, we would need a court order in order to... You would have to come back to us and say, they're not, the Capitol Police have not yet done what they were supposed to do. Correct. And if it was at that stage in the game, we could call the Capitol Police in and say, well, you haven't done what you were supposed to do, and then perhaps a contempt would come. Right. The purpose of filing the petition for enforcement is so that whatever argument they have for not complying with the orders addressed here, rather than having another proceeding for that. So, I mean, that's the reason why it's routinely done. I mean, and in many circuits, usually it says affirmed and enforced is all it says. I mean, it's a very simple order. Did you intend to leave some time for your colleague? Yes, I did. Yes. We're close to exhausted it, but we'll still restore it. Okay, so let's hear from Mr. Ricksecker. Thank you. May it please the court. My name is David Ricksecker, and I'm here representing the Andrew Ricken, who's here today. For the short time that I do have, I'd like to focus a little bit on the background. I can address the time in this issue as well, and that this is exactly what the parties, the way this has worked through this process is exactly what the parties have bargained for in their collective bargaining agreement. The events that began this heavily litigated case were seven years ago. Back in 2011, there's been three appeals to the Office of Compliance Board through this process, and a few things to keep in mind when considering all of this is that prior to the events at issue here, he had never received any discipline in his six years in the U.S. Capitol Police Force. Since then, in the time that he has been terminated, he has been serving in the Army National Guard, excuse me, Army Reserves. He has maintained a DOD security clearance. There's absolutely no risk in having him- I think the merits of the action are not before us. Okay. Isn't that right? We have to cross these procedural. Sure. I'll move on to that, Your Honor. Basically, for starters, this is exactly what the parties bargained for in their collective bargaining agreement. They anticipated that terminations and arbitrations involving terminations would be considered under section 32.13 of their collective bargaining agreement, detailing when the date of a final decision would be for removal of a USP employee from the payroll. They also, in defining the purpose of discipline, that it's not solely to punish the employee, that they're going to consider progressive discipline, that removal was the severest form of discipline that the department can use. In the very next section, they address that this covers actions involving command discipline, including removals. Basically, what the arbitrator simply did was apply that contract to ensure that the department and the chief, in making his determination to terminate this employee or discipline this employee, followed the procedure set out in 31.03. No, there's no argument about it. You're saying what the other side would agree with. The question in front of us is not whether or not the arbitrator did what the agreement told him to do. The question is, did he have the authority to do it? Correct. What information do you have to help us decide that question? On two points, really quickly, and then I do want to address the timeliness issue, but on that point is, first of all, they have the option of an appeals process. In the legislation, it said an option of the appeals process or a negotiated grievance procedure. Here, as we've discussed, there is no MSPB type entity. The negotiated grievance procedure is what would be used for termination. That is what was used in this case and in other cases. Also here, the CPB is not the employing authority agency. They do not have the final authority on it. They can only act on the decisions made by the chief. The chief has the discretion and the discretion to apply all of these factors, the employee's work record, the seriousness of the offense, prior discipline, how others are treated. The CPB board doesn't. They simply review that and they can stay silent, but they cannot initiate any sort of action or recommend any sort of discipline. That's hardly surprising. They have nothing to do with the day-to-day conduct of the police force. I understand that, but the statute reads... It's irrelevant that they lack the authority to initiate. The key point from your adversary, which you have to deal with, is that the board has the final say. The board can say, excuse me, you cannot terminate that person. They can. They could also simply remain silent. In fairness to your adversary, address her point of view. She says, well, the fact that if the chief of police says I want to terminate Clevenger and the board says you can't do it, then the chief of police has to fold his hands and say, well, sorry, I don't have any power here. That seems to me to be an argument that has some merit. I understand that, but my point is it was envisioned that these employees would have rights to enforce certain labor relations statutes. One of those is being able to prevent such improperly applied discipline or overly harsh discipline, that kind of thing. If you weren't able to appeal the decision by the chief who was applying all of these, there would be no effective remedy. For those purposes, I think it's very clear that it was envisioned that terminations would be covered, but through the statute, there's nothing. There's silence on whether terminations should apply or not in the statutory history and the regulatory history. For those reasons, I think the department's argument is without merit. I do want to address a couple of things on the timeliness issue. Basically, on that, your honor is absolutely correct. The order came out from the OOC board on the first appeal. The department never distinguishes or defines a date that they believe should set the ULP clock ticking. They basically say it could be anywhere between December 15th or January 26th. However, on December 19th, when the arbitrator was informed of the order, they said, we will work with the union to comply with this award or something to that effect. After some back and forth on that, in January 26th, they said, when asked, when are you going to produce the information required to calculate back pay, and when can you the details on how Officer Rickon is to report back to work, get back up to speed on any training he's missed, get his equipment, his uniform, all the stuff that he had to turn in. The response was, let me check with my client on how they want to deal with this. I think two weeks went on from that. Nothing had happened. The arbitrator said, reinstate him within 30 days, which put us to, I believe, around March 20th would have been 30 days. On March 13th was the very first time the department said, we do not intend to comply with this award because we don't believe the arbitrator had jurisdiction. Therefore, at any one of these points, whether it's March 13th, the date they informed the parties that they don't believe he had authority, or March 20th, or even what we argued originally was the June 17th order, clarifying the award with the actual damages owed and such, those all fall within the time period to file the ULP, and therefore, that argument is without merit. I know I'm out of time, so I appreciate your time. If you have any more questions, I'd be happy to answer them. Any more questions? Thank you. Thank you. Thank you. I'm going to start really quickly with the arguments that have been made as far as the timeliness issue. Opposing counsel for the Office of Compliance states that the USCP set forth a discovery rule. I'm just going to read directly from our reply brief, which says, while the Office of Compliance Board of Directors acknowledges this evidence and does not dispute it, referring to the timeliness, the time period in which the board's decision was issued and the procedures that are followed after that decision was issued. It summarily dismisses by mischaracterizing the department's argument as invoking the discovery rule. Contrary to the OOC board's assertion, however, the USCP is not arguing that the statutory period began to run at the time of the FOP's discovery of the USCP's noncompliance. Rather, it cites this evidence to show that long before the arbitrator sent the February 17th, 2015 email, the USCP's first opportunity to comply with the May 13th award had come and gone without the USCP taking any steps to comply as shown by the arbitrators and the FOP's correspondence. Let me go into a little bit of detail of what that means. On December 12, 2014, the Office of Compliance Board of Directors issued its decision denying the USCP's exceptions as to May 13, 2014 arbitration award. According to the Office of Compliance's own regulations, where an arbitration award, the May 13th award, does not specifically include a deadline. The deadlines of the rules apply. The deadline set forth by the rules, which is Office of Decision of the Office of Compliance Board of Directors, shall carry out its terms promptly and shall within 30 days after the decision or order becomes final and goes into effect by its terms, provide the OOC and all parties to the proceedings with a compliance report specifying the manner in which compliance with the provisions of the decision or order has been accomplished. Following the OOC board's decision on December 12, 2014, the USCP took no steps, none, to comply with the final decision of the Office of Compliance with the May 13, 2014 award. 30 days thereafter, the USCP filed no report explicitly setting forth what it had done or what it was going to do to comply with that decision. Indeed, the arbitrator and the union's correspondence in this case demonstrate that the USCP's obligation to comply occurred well before the arbitrator issued its February 17, 2015 email setting a deadline of March 17, I believe it was, to comply. Prior to any such amendment by the arbitrator to his award, there was an obligation to comply. Under National Treasury Employees Union versus the FLRA, the DC Circuit stated that it is the first obligation to comply, not when the order, as the Office of Compliance has argued, not when the order becomes final. The issue is when was the USCP's first obligation to comply, and under its own regulations, that first obligation to comply was promptly after the order was issued. We've argued in our brief that that meant December 15, 2014. The USCP had some obligation to act. December 15, 2014 is the first business day after the Office of Compliance Board Director's decision was issued. Based on that, any argument that the USCP's obligation to comply didn't arise until three months after the Office of Compliance issued its decision is just not supported by the case law, and it's not supported by the evidence in the record. I'll move on now to the Section 7121 arguments that were raised by Closing Counsel. I'm short of time, so I'll be speedy. I will be. I want to take to its conclusion the Office of Compliance's argument that an issue may arise before an arbitrator concerning terminations, and subject to 7121E, 7121F, and 7122, there is no ability for the USCP or the employee to challenge the arbitrator's decision. That means that the arbitrator's decision would be final and binding on the parties, and there would be no opportunity for judicial review. That is unprecedented, not only in the public sector, but the private sector, where there is still judicial review of an arbitrator's decision. It's critical here because, unlike in the private sector, arbitrators in the public sector may be construing statutory, federal, and state law provisions in resolving the case or the dispute between the parties. What 7121E, F, and 7122 do is prevent any party from challenging those decisions. An arbitrator who oftentimes doesn't even have a law degree will have final say as to what a statutory interpretation is, whether or not an employee should be deemed fit or unfit to continue as a USCP officer. That is unprecedented in both the public and private sector. For that reason, we believe that Congress expressly chose these provisions of 7121. The Office of Compliance says they don't apply here, but they do. They were adopted by the CAA. For that basis, when you have something that is adopted by Congress, knowing that these provisions have been construed to limit the rights of employees, to challenge certain personnel actions when they've been deprived of those rights otherwise in another statutory appellate system, you can only conclude that Congress understood how those provisions would apply to employees in this statutory, in the legislative branch, who are now subject to those provisions. Unless there are further questions. All of this applies to some issues, but not to others. I'm sorry, I didn't hear your question. You've said in your brief the same thing. You said, certain things are going to be excluded because of the Foust argument, but not everything. That is correct. What kind of personnel action, say terminations for the purpose of argument, are excluded? Yes. What about 13-day suspensions? 13-day suspensions are not precluded by any statutory provision under the FSOMRS. You're saying that everything would be fine. A final arbitrator's decision on 13-day suspension would be okay. There wouldn't be a final arbitration, and this is critical. In those situations, there isn't an opportunity to appeal. For example, the Capitol Police said, we're not going to terminate you, but we're going to unemploy you for a year. It's not termination, it's just you go away for a year with no pay. Under your argument, that person could still go in this system and come to a final arbitration. The issue is- That was the part of your whole case that troubled me, was to say, well, certain rights are going to be covered, but others are not. Right, but the basis of the- Other than your special rule argument, I couldn't quite understand why terminations would be peeled out. Sure. Let me clarify. The subject matters of 7121E and F and 7122 concern specific statutes or provisions of the CSRA. Those provisions are chapters 43 and chapter 75, if I'm not mistaken. Those include any suspensions, I believe, over 15 days, terminations, demotions, and I'm sure I'm missing some others. Those are the provisions that we're saying, or those are the subject matters that are governed by those particular provisions of 7121. For you, those are gone. Those are off the table. But 7121 says these matters, these matters covered by chapter 75 or chapter 43, and other similar matters under, I might be getting the language wrong, but they're saying similar matters under other personnel systems. It's not just chapters 43 and chapter 75 that apply. It's saying those topic matters covered by those sections and other similar matters under other personnel systems are what these provisions apply to. And so for that reason, when the subject matter of agreement... Is the CAA one of those other provisions? Is the CAA... 7121, yeah, is the whole congressional system an other system? It is an other personnel system. It's not a part of the CRA. Sorry, CSRA. I understand that. Of course, it's that one statute we're now talking about where they have that language other system. The CAA is part of that. That is correct. So the line that we're drawing is the line that's drawn by the statute with respect to specific subject matters, specific subject matter that Congress, if you look at the legislative history of the FFLMRS, says these are serious personnel actions, and we want more than just the negotiated grievance procedure, the appeal, the process that's available there. Employees subject to these actions deserve a heightened level of scrutiny. For example, if such scrutiny is available in the statutory appeal system. Right, but the result of your theory is that Capitol Police who are subpoenas get nothing. Yeah, the result of my... They can be 14-day suspension. They can be terminated, and it's over. It's solely at the discretion of the police force. If it is... They have no due process rights at all. It's not that they don't have due process... They have no rights. I mean, they can't grieve because it's not subject to a grievance. They have no place to go. They get the notice from the Capitol Police that's been approved by the board saying, you're fired, you leave. They don't have an APA cause of action, they're gone. Right, so they don't have... You're saying for purposes of this class of punishments, if you will, the serious stuff. The employee who is seriously punished has no recourse. So let me back up for a second. I'm not trying to be... No, no, and I want to answer your question. That's the other side of your coin. One side of your coin is, could Congress have really meant to let an arbitrator have all this power and tell the police force who should be there? So that's your counter to the argument, well, Congress really intended these people have no rights at all, period. Totally unlike all their counterparts in the CSRS. Well, it's actually not unlike all their counterparts in the CSRS. Unlike those in the CSRS who were given CSRS rights. That's right. So we know from our previous experience that DEA officers, for example, criminal law enforcement officers have full MSPB rights because they're in front of us all the time. But you're saying what Congress really meant was a law enforcement officer over in the executive branch, unless Congress specifically took them out of CSRA, has lots of rights, whereas the Capitol Police have none. I mean, I think that's your argument. Tell me if I'm wrong, because I don't want to go wrong here. Right. It is correct. But let me clarify further. Okay, thank you. So we start with the due process notion. There is due process internally. So employees still are able before the chief of police recommends any termination, employees get noticed that they are being recommended for termination. And there's an entire process, including a disciplinary review board, where they can choose to appear before their peers and other important persons in the department with authority to decide these matters and to review it and determine it. In fact, I believe Officer Ricken did appear before DRB. So it is correct that taking my argument to its full conclusion, there would be no negotiated grievance procedure as to certain serious personnel actions, because such procedures or such appellate challenges don't exist outside of the negotiated grievance procedure. There would be no opportunity for someone outside, besides the CPB, to review a termination decision. That is absolutely correct. However, that's not unlike the executive branch, where employees who were denied access to the CSRA's appellate procedures for terminations and other serious personnel actions were also denied access to the negotiated grievance procedure. Okay. Thank you. I'm sorry I took additional time, but I found this case very, very difficult. Thank you. Thank you. Okay. Thank you. Thank you all. The case is taken under submission. That concludes.